```
        IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
                     CLARKSBURG
```

**MARK R. LEE,**

    **Plaintiff,**

v.                            **CIVIL ACTION NO. 1:22-CV-156**
                                           **(KLEEH)**

**WEST VIRGINIA UNIVERSITY, WEST VIRGINIA**
**UNIVERSITY SCHOOL OF MEDICINE, and**
**WEST VIRGINIA UNIVERSITY MEDICAL CORPORATION,**
**doing business as University Health Associates,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER DENYING DENYING DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER [ECF NO. 55]**

Pending before the Court is Defendant West Virginia University Medical Corporation d/b/a University Heath Associates' ("UHA") *Motion for Leave to File Amended Answer* [ECF No. 55]. Plaintiff Mark R. Lee responded in opposition to Defendant's Motion, and Defendant then replied in support. ECF Nos. 56, 58. Thus, the Motion is fully briefed and ripe for review. For the reasons discussed herein, Defendant's motion is **DENIED**.

### I.  FACTUAL BACKGROUND

Plaintiff Mark R. Lee, M.d. ("Plaintiff" or "Lee") filed suit after being terminated as a professor and the Chair of the Department of Neurosurgery at the West Virginia University School of Medicine ("WVUSOM"). Compl., ECF No. 1 at ¶ 67.

On or about May 29, 2018, 59-year-old Plaintiff accepted the position of Chair of the Department of Neurosurgery at WVUSOM. Id. at ¶¶ 28-9. In May 2021, Plaintiff was approached by Dr. Clay Marsh, the Executive Dean of Health Services and the Dean of WVUSOM to discuss a new role. Id. at ¶¶ 11, 51. Plaintiff alleges that the new role would require him to step down as Chair of the Department of Neurosurgery. Id. at ¶¶ 51-2. Plaintiff alleges that Marsh indicated during their discussion that he would like to find a new, "much younger" doctor to replace Plaintiff who would have a "ten-to-fifteen-year runway" ahead of them. Id. at ¶ 54.

In June 2021, Plaintiff informed Marsh that he would not be taking the new position and intended to remain in his current role as Chair. Id. at ¶ 57. Soon after, Marsh allegedly advised Plaintiff that he intended to look for a new Department of Neurosurgery Chair and planned to transition Plaintiff out of the role at the end of 2022. Id. at ¶ 58. According to Plaintiff, Marsh indicated his desire to find someone younger and earlier in their career with energy for the role. Id. at ¶ 59. On July 29, 2021, and August 12, 2021, Plaintiff reported the remarks to University officials and their counsel. Id. at ¶ 63. The reports allegedly led Marsh to remove Plaintiff from his chairmanship on September 1, 2021, instead of August 2022, as previously discussed. Id. at ¶ 65. Plaintiff was subsequently removed as the Chair of the Department of Neurosurgery and as a professor at WVUSOM. Id. at ¶

67. Plaintiff contends he was downgraded from a 1.0 full-time equivalent ("FTE") position with full benefits to a courtesy faculty member providing clinical services at only a .40 FTE position without benefits. Id.

On August 20, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against the Defendants, alleging discrimination based on age and retaliation in response to making a complaint of age discrimination. Id. at ¶ 75.

Plaintiff names Defendant in all five counts of his Complaint:

(1) Age Discrimination in Violation of the Age Discrimination in Employment Act,

(2) Age Discrimination in violation of the West Virginia Human Rights Act,

(3) Retaliation in Violation of the Age Discrimination in Employment Act,

(4) Retaliation in Violation of the West Virginia Human Rights Act, and

(5) Breach of Contract.

Compl., Id. at pp. 14-21.[1] Specifically, Plaintiff claims that his termination is a result of age discrimination and that the Plaintiff's reporting of the Defendant's remarks about his age, led to Plaintiff's termination. Id. at ¶¶ 91-139. He further

---

[1] Defendants West Virginia University and West Virginia University School of Medicine were named in counts two and four; they have since been dismissed. ECF No. 31.

3

alleges that the termination breaches the parties' contract. Id. at ¶¶ 140-47.

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint on December 16, 2022, against Defendants West Virginia University, West Virginia university School of Medicine, and West Virginia Corporation d/b/a University Health Associates ("UHA") [ECF No. 1].[2] Defendants filed their Answer on February 21, 2023 [ECF No. 10]. Pursuant to the Court's Scheduling Order, the deadline to amend pleadings was March 31, 2023 [ECF No. 14]. On September 27, 2023, UHA notified Plaintiff of its intent to assert a failure to exhaust defense and requested Plaintiff's consent to do so by amending its Answer. On October 6, 2023, UHA filed the subject Motion for leave to file an amended answer [ECF No. 55]. Plaintiff responded in opposition on October 13, 2023 [ECF No. 56] and Defendant subsequently replied in support of its Motion on October 20, 2023 [ECF No. 58].

## III. LEGAL STANDARD

### a. Leave to Amend Under Rule 15

Federal Rule of Civil Procedure 15 permits a party to amend an answer "once as a matter of course" within 21 days after serving the pleading. FED. R. CIV. P. 15(a)(1). "In all other cases, a party

---

[2] West Virginia University Medical Corporation d/b/a University Heath Associates is the only remaining Defendant because Defendants West Virginia University and West Virginia University School of Medicine filed a motion to dismiss on February 28, 2023, which was granted on April 20, 2023. ECF No. 31.

4

may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Under Federal Rule of Civil Procedure 8(c), a defendant, in response to a pleading, must affirmatively state any affirmative defense. The Fourth Circuit has held that "[a]n affirmative defense may be pleaded in general terms and will be held to be sufficient ... as long as it gives plaintiff fair notice of the nature of the defense." Clem v. Corbeau, 98 Fed. Appx. 197, 203 (4th Cir. 2004).

The decision to grant or deny a motion to amend is within the discretion of the Court. See Scott v. Fam. Dollar Stores, Inc., 733 F.3d 105, 121 (4th Cir. 2013). Nonetheless, the Supreme Court of the United States has set forth factors that courts should weigh when applying Rule 15(a)(2). See Foman v. Davis, 371 U.S. 178, 182 (1962); Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986). Courts should grant leave to amend unless the amendment (1) "would be prejudicial to the opposing party," (2) "there has been bad faith on the part of the moving party," or (3) "the amendment would have been futile." Johnson, 785 F.2d at 509 (citing Foman, 371 U.S. at 182).

The first factor, whether there is prejudice to the opposing party, can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party. Johnson, 785 F.2d at

5

510. Often, a finding of prejudice applies when the amendment is offered "shortly before or during trial." Id. at 510 (citing Roberts v. Ariz. Bd. of Regents, 661 F.2d 796, 798 (9th Cir. 1981) (citations omitted)).

The second factor is whether the party seeking to amend is doing so in bad faith. Bad faith amendments are "abusive" or "made in order to secure some ulterior tactical advantage." GSS Props., Inc. v. Kendale Shopping Ctr., Inc., 119 F.R.D. 379, 381 (M.D.N.C. Mar. 15, 1988) (citing 6 C. Wright & Miller, Federal Practice and Procedure, § 1487 (updated Apr. 2015))). In assessing this factor, the court may consider the movant's delay in seeking the amendment but delay alone "is an insufficient reason to deny [a] motion to amend." Hart v. Hanover Cnty. Sch. Bd., No. 11-1619, 495 Fed. App'x 314 (4th Cir. 2012) (citations omitted).

The third factor weighs against granting leave to amend when that amendment would be futile. Johnson, 785 F.2d at 509-10. Even in the absence of prejudice and bad faith, a court should still deny leave to amend on the basis of futility "when the proposed amendment is clearly insufficient or frivolous on its face." Johnson, 785 F.2d at 510. If relief cannot be granted, the amendment is futile. See Hutsell v. Sayre, 5 F.3d 996, 1006 (6th Cir. 1993).

### b. Rule 16's Good Cause Standard

Federal Rule of Civil Procedure 16(b)(4) provides that a Scheduling Order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Although leave to amend a pleading should be freely given when required under Rule 15(a), Rule 16(b)'s good cause standard must also be satisfied to justify leave to amend the pleadings after the deadlines provided by a scheduling order have passed. Nourison Rug Co. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008); see also Smith v. United Parcel Serv., Inc., 902 F. Supp. 719, 721 (S.D.W. Va. 1995) ("Once the scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b). If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a).").

> "Good cause" requires the party seeking relief to show that the deadlines cannot reasonably be met despite the party's diligence, and whatever other factors are also considered, the good-cause standard will not be satisfied if the district court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.

Cook v. Howard, 484 F. App'x 805, 815 (4th Cir. 2012) (quotation and alterations omitted). "Under Rule 16(b), good cause exists where the moving party has diligently made efforts to meet court-imposed deadlines." Tawwaab v. Virginia Linen Serv., Inc., 729 F. Supp. 2d 757, 768 (D. Md. 2010) (citation omitted). "The factors

7

to be considered in determining whether there is good cause or excusable neglect include the danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith." Id. at 768-69 (internal quotations and citation omitted).

## IV. DISCUSSION

Defendant seeks leave to amend its Answer to add the affirmative defense that Plaintiff's claim for constructive discharge is barred by Plaintiff's failure to exhaust his administrative remedies. Specifically, Defendant seeks to assert that despite filing a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") nearly five months prior to his employment ending, Plaintiff never submitted a constructive discharge claim to the EEOC. Therefore, Defendant claims that the constructive discharge claim should be barred by the Plaintiff's failure to exhaust his administrative remedies. Plaintiff did not consent to Defendant amending its Answer.

UHA asserts its Motion should be granted because Plaintiff was on notice of the possible defense when UHA sought permission to amend its pleading and thus Plaintiff would not be prejudiced. ECF No. 55 at ¶ 3. Furthermore, UHA argues that affirmative defenses, like the one at issue here, may be asserted for the first time in a motion to dismiss or a motion for summary judgment. Id.

8

at ¶ 6. See Grunley Walsh U.S., LLC v. Raap, 386 Fed. Appx. 455, 459 (4th Cir. 2010) (unpublished); First Union Nat. Bank v. Pictet Overseas Tr. Corp., Ltd., 477 F.3d 616, 622 (8th Cir. 2007). Thus, UHA argues that prohibiting Defendant from amending its Answer would not prevent it from arguing Plaintiff failed to exhaust his administrative remedies.

In opposition, Plaintiff argues that Defendant has not met the Rule 16 good cause standard because it does not give any substantive reason why the affirmative defense could not have been raised sooner. See ECF No. 56 at ¶¶ 3-4. Lee argues that while an affirmative defense can be raised for the first time in a dispositive motion, parties seeking to amend their pleadings are nonetheless required to demonstrate a reasonable basis for their failure to assert the defense beforehand. Id. at ¶ 7; Montgomery v. Anne Arundel Cnty., Maryland, 182 Fed. Appx. 156, 162 (4th Cir. 2006) (unpublished); Jennings v. Frostburg State U., 679 F. Supp. 3d 240, 266-67 (D. Md. 2023). See also Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008). Because Defendant failed to provide a substantive reason for its delay, Plaintiff argues Defendant failed to show it acted with good cause. Id. at ¶ 10.

Here, the Court **FINDS** Defendant has not shown good cause under Rule 16 to warrant leave to amend its Answer. Defendant has not put forth evidence that it made diligent efforts to meet the

9

amendment deadline. Nor did Defendant argue that the applicable defense was only found after the deadline for amending pleadings or provide any explanation for why it was not raised earlier. See Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008) (holding that finding an applicable defense not brought up in the answer is not enough to satisfy Rule 16's good cause standard when there is no indication that the facts were discovered after the scheduling order's deadline). While Defendant asked for Plaintiff's permission to add the affirmative defense on September 27, 2023, such permission was sought months after the deadline for amended pleadings. Black's Law Dictionary defines diligence as the "persevering effort to accomplish something undertaken." DILIGENCE, Black's Law Dictionary (11th ed. 2019). A single attempt to add the defense months after the Court's deadline is not acting diligently. Defendant failed to act with diligence to adhere to the amended pleadings deadline and gives no reason to justify its delay.

Accordingly, Defendant's Motion [ECF No. 55] is **DENIED** because Defendant has not put forth any reasoning to justify the delay, nor has it shown that it made diligent efforts to meet the Court's deadline. Because the Court finds Defendant did not meet Rule 16's good cause standard, it need not analyze Defendant's Motion under Fed. R. Civ. P. 15.

While the Court declines to permit Defendant leave to amend its Answer, this ruling does not inherently prohibit Defendant from raising the failure to exhaust administrative remedies defense in this litigation. As asserted by Defendant, the affirmative defense can be raised for the first time during a motion to dismiss or motion for summary judgement. Grunley Walsh U.S., LLC, 386 Fed. Appx. 455 (holding that affirmative defenses raised for the first time in summary judgment motions may provide the required notice); Brinkley v. Harbour Recreation Club, 180 F.3d 598, 612 (4th Cir. 1999) (finding "there is ample authority in this Circuit for the proposition that absent unfair surprise or prejudice to the plaintiff, a defendant's affirmative defense is not waived when it is first raised in a pre-trial dispositive motion."); Coppola v. O'Brien, No. 3:15-CV-96, 2016 WL 4702441, at *3 (N.D.W. Va. Sept. 8, 2016), aff'd, 691 F. App'x 725 (4th Cir. 2017)(finding "the defense is not waived merely because the party asserting it failed to raise it in an initial responsive pleading").

Plaintiff would thus not be unduly prejudiced if Defendant later raised this defense because he has been on notice of the potential defense since at least September 27, 2023, when Defendant first sought permission to amend its Answer. Therefore, Defendant need not amend its Answer in order to assert the exhaustion defense.

11

## V.  CONCLUSION

For these reasons, the court **DENIES** Defendant West Virginia University Medical Corporation d/b/a University Heath Associates' *Motion for Leave to File Amended Answer* [ECF No. 55].

It is so **ORDERED.**

The Clerk shall transmit copies of this Order to counsel of record by electronic means.

**DATED:** July 8, 2024

                                   *Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA