IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

MARK R. LEE,

      Plaintiff,

v.                          CIVIL ACTION NO. 1:22-CV-156
                                (KLEEH)

WEST VIRGINIA UNIVERSITY, WEST VIRGINIA
UNIVERSITY SCHOOL OF MEDICINE, and
WEST VIRGINIA UNIVERSITY MEDICAL CORPORATION,
doing business as University Health Associates,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 117]

Pending before the Court is *Defendant's Motion for Summary Judgment* [ECF No. 117]. For the reasons discussed herein, the Motion is **GRANTED.**

## I.    RELEVANT PROCEDURAL HISTORY

The EEOC and the WVHRC issued right to sue letters on September 20, 2022, and December 14, 2022, respectively [ECF Nos. 1-1, 1-4]. Thereafter, Dr. Lee commenced this action asserting five causes of action [ECF No. 1] against West Virginia University ("WVU"), West Virginia University School of Medicine ("WVUSOM"),[1] and West Virginia University Medical Corporation doing business as University Health Associates ("UHA"). By prior Order [ECF No. 31],

---

[1] West Virginia University and West Virginia University School of Medicine are referred to collectively herein as "the WVU defendants."

the Court dismissed the WVU defendants as parties and dismissed without prejudice Counts II and IV of the Complaint as they relate to the WVU defendants. ECF No. 31.

On August 28, 2024, UHA filed *Defendant's Motion for Summary Judgment* [ECF No. 117] moving for judgment as a matter of law on Dr. Lee's claims for age discrimination under the Age Discrimination in Employment Act ("ADEA") and the West Virginia Human Rights Act ("WVHRA"), retaliation under the ADEA and the WVHRA, and breach of contract. Dr. Lee then filed his response in opposition to the motion for summary judgment on September 18, 2024 [ECF No. 119] and UHA replied in support of its Motion on October 2, 2024. ECF No. 122. Thereafter, the Court held a hearing and took up arguments on the subject motion on December 16, 2024. Thus, UHA's motion for summary judgment is fully briefed and ripe for review.

## II.  FACTUAL BACKGROUND

In the spring of 2018, Dr. Ali Rezai ("Rezai"), the Executive Director of the Rockefeller Neuroscience Institute ("RNI"), and Dr. Clay Marsh ("Marsh"), Chancellor and Executive Dean for Health Sciences at WVU, began recruiting Plaintiff Dr. Mark Lee ("Lee" or "Plaintiff") to serve as Chair for the Department of Neurosurgery for WVU and as a pediatric neurosurgeon. ECF No. 118, Def. Mem. Mot. Summ. J. at pp. 2-3; ECF No. 120, Pl. Mem. in Opp. Summ. J. at pp. 1-2. Lee was to be employed by two separate but affiliated

2

entities. First, in May 2018, WVU appointed Lee as Chair of the Department of Neurosurgery within the School of Medicine at the Robert C. Byrd Health Sciences Center of WVU ("WVUSOM"). WVU Contract, ECF Nos. 117-9, 121-12. Lee's employment with WVU was governed by a letter dated May 29, 2018, which Lee signed on May 31, 2018. Id. Additionally, Lee entered into a professional services agreement ("UHA Contract") with West Virginia University Medical Corporation doing business as University Health Associates ("UHA") to work as a physician practicing pediatric neurosurgery. UHA Contract, ECF Nos. 117-10, 121-11.

Each contract required Lee to be employed with the other entity as a condition of employment, but each employment relationship was governed by its separate agreement [ECF Nos. 117-9, 117-10]. For example, the WVU Contract provides in pertinent part:

> You will also be required to sign a separate Professional Services Agreement ("PSA") with the West Virginia University Medical Corporation, which is the faculty practice plan for all clinical service activities of the physician faculty. Your employment with WVU is contingent upon the execution of the PSA and continued employment with UHA.

ECF No. 117-9 at p. 2. Similarly, the UHA Contract provides as a condition precedent, Lee must:

> Enter into a written agreement with the WVUSOM to be a full-time member of the Faculty and a full-time employee of the WVUSOM effective August 31, 2018.

3

Regarding Lee's employment with WVU as faculty member and chair of the Neurosurgery Department, the WVU Contract laid out Lee's position responsibilities, expected benchmarks for the role, compensation information, among other terms and conditions of employment. ECF No. 117-9. As a WVU employee, Lee reported to Marsh and Rezai. Id. at p. 4. The faculty and chair appointments were subject to renewable one-year terms. Id. As a UHA employee, Lee was hired for automatically renewing successive one-year terms and the UHA Contract provided conditions for early termination including a 90-day notice of intention not to renew and other occurrences which would automatically terminate the UHA Contract. ECF No. 117-10 at p. 4. For instance, the UHA Contract provides that the agreement would terminate automatically if Lee was no longer a full-time employee and faculty member of WVUSOM. Id. Both agreements contemplated a total combined annual salary of $1,250,000 for Lee's full-time work for WVU and UHA. ECF Nos. 117-9, 117-10. Further, Lee was eligible to earn $50,000 annual bonuses as part of the Chair's incentive program. ECF No. 117-9.

According to Defendant, Dr. Lee's supervisors and colleagues became concerned regarding his performance after his first year with WVU and UHA. ECF No. 118. For example, Rezai observed that Lee reduced his participation and attendance in meetings and that his personal productivity declined in 2019 and 2020. ECF No. 117-4, Rezai Dep. at 195:19-24. Additionally, Dr. Judie Charlton

4

("Charlton") who served as the Chief Medical Officer for UHA until November 2020, also expressed concerns regarding Lee's work. During his annual review in 2020, Charlton discussed with Lee concerns regarding his absenteeism and lack of involvement on satellite campuses. ECF No. 117-6, Charlton Dep. at 117:1-19. They also discussed concerns with Lee's productivity on the surgical side, his management of the neurosurgery department, and the misuse of WVU Foundation funds. Id. at 117:20-119:23; 124:15-18.

Though the concerns were raised in person during Lee's evaluation, they were not explicitly documented in his official evaluation or elsewhere. ECF No. 120-5, Charlton Dep. 126:2-8 ("They are alluded to in a graceful manner to allow a professional an opportunity to adjust."); ECF No. 117-6 at 121:2-10 ("this was a collegial intervention on my part to bring negative issues forward to him that both Doctor Marsh and Albert Wright and I had shared, so I'm extrapolating on what went on in the verbal dialogue and why we chose not to put it in [the written evaluation]". Rather, Lee's evaluations from 2020 and 2021 provide key performance metrics for the neurosurgery department, identify notable events and challenges from the prior year, and list goals or focuses for the upcoming year. ECF No. 121-15. And, in 2020 and 2021, all department chairs, including Lee, received 100% of the incentive bonus payment - $50,000. Id.

After Lee met with Charlton in March 2020, Rezai met with him

because Lee appeared upset and surprised from the feedback he
received during his evaluation. ECF No. 117-4, Rezai Dep. at 197:1-
3; 199:3-5. During this meeting, Rezai reiterated that he wanted
Lee to succeed and that he needed to change his ways and
participate more. Id. at 197:4-13. Though Charlton and Rezai
expressed concerns regarding department productivity, Lee did not
"lean on" the other providers to produce more work and felt Rezai
was micromanaging the department. ECF No. 117-8, Lee Dep. at 217:1-
24.

Believing that Lee was no longer passionate in his role and
continued to disengage during his second and third years with WVU
and UHA, Rezai and other leadership sought to develop a role for
Lee to create a new pediatric neuroscience program in the Spring
of 2021. ECF No. 117-4 at p. 130:10-24. Rezai wanted to offer Lee
a new position because he was a good surgeon, WVU needed pediatric
neurosurgery, and leadership wanted to give Lee a chance to help
move things forward. Id. at 222:4-6. Lee seemed interested and
engaged in the new opportunity. Id. at 222:17-18. Accordingly,
Rezai, Marsh, and other leadership worked to develop the new
position for Lee. By letter dated May 3, 2021, Lee was offered the
position of Executive Director of the WVU Medicine Children's
Neuroscience Center within RNI. ECF No. 117-18. The offer letter
provided that Lee would receive the same compensation, but his
effort allocation would change to 30% administrative, 60%

clinical, and 10% academic. Id. Further, he would report to the new Chair of Neurosurgery for his clinical and academic efforts; Marsh and Rezai would still supervise Lee's administrative efforts. Id. The offer letter additionally provided that Lee would assist in transitioning the Chair responsibilities to the next Neurosurgery Chair – anticipating a 3-month transition period in which Lee would assist the new Chair through September 2021. Id. The offer letter was signed by Marsh, Rezai, and Dr. Michael Edmond, who took over Charlton's role as the head of UHA in November 2020. Id. Lee thought this was a good plan. ECF No. 117-8 at 232:1.

On or about May 3, 2021, while meeting over Zoom, Marsh informed Lee that he would no longer be able to serve as the Neurosurgery Chair if he accepted the new role with the pediatric neuroscience center. ECF No. 120-13, Lee Dep. at 332:21-334:6. While discussing a potential replacement for chair position, Marsh stated that he was interested in recruiting someone younger with a longer runway who would be able to stay in the position for ten to fifteen years. Id. at 333:7-9.

Rezai, along with Amy Bush and Karyn Wallace, met with Lee regarding the new position and offer on May 10, 2021. ECF No. 117-17. Rezai reported to the leadership group that they had a positive discussion about the role, but that Lee wanted the option of a non-qualified deferred compensation plan. Id. Lee had previously

inquired to Amy Bush and Marsh whether such a compensation plan would be possible. ECF No. 117-20. Lee informed Marsh on May 5, 2021, that being able to participate in a non-qualified deferred compensation plan was "critical" if he were to transition to the new role. Id. Upon consultation with Director of Human Resources Leeann Kaminsky, it was determined that a deferred compensation plan could not be offered with the new role. ECF No. 117-4 at 131:20-23 ("We can't do it based on state's legal rules. . . We tried. If we could have given it to him, we would have given it to him."). Accordingly, Lee did not accept the executive director position because the non-qualified deferred compensation plan was an important term for him. ECF No. 117-8 at 258:13-259:70; 117-4 at 131:15-19, 139:17-20 ("when he said no, because you're not paying me my deferred comp, that was a very big disappointment from everybody universally, here"); Marsh Dep., ECF No. 120-1 at 247: 23-25, ECF No. 117-5 at 248:1 ("[A]s I understood it was really based on the inability for us to defer his compensation.").

Because Lee did not accept the new position and WVU/UHA leadership were unhappy with his productivity and performance, Rezai and Marsh determined a transition and new plan forward was necessary. ECF No. 117-4:271:18-21, 289:19-22.

According to Lee, Marsh presented him with three options in June of 2021. ECF No. 120-13, Lee Dep. 238:5-24. First, Lee could continue on as Chair of Neurosurgery for an additional two years

8

with required goal metrics. Id. Second, Lee could continue as Chair for one year to assist in the transition for the new chair, and then would receive $630,000. Id. Third, Lee could continue as Chair for one year to assist in the transition and then return to a regular faculty position in the Neurosurgery department. Id. Marsh and Lee continued to discuss the possible transition approaches. ECF No. 117-4, 271:10-17. See also, ECF No. 120-1, Marsh Dep. at 251. During these discussions, Marsh expressed his desire to hire a new chair that was younger and earlier in their career with more interest and energy for the role. ECF No. 120-18. According to Rezai, throughout these discussions, Lee maintained his preferred plan was to be paid two year's salary and to cease his employment with WVU and UHA. Id. at 253:19-24.

On July 19, 2021, Edmond met with Lee to discuss a proposed transition plan, which provided that WVU/UHA would pay Lee a settlement of $630,000 on August 21, 2022, if the following metrics were attained:

- A new Chair of Neurosurgery has been recruited
- A new pediatric neurosurgeon has been recruited
- Pediatric neurosurgery volume metrics are met
- Stabilization of system needs for neurosurgery

ECF No. 117-22. The proposed plan also stated that the settlement value would be decreased by 10% for each metric Lee failed to

attain in the year, but that if all the metrics were achieved, leadership would "consider earlier release." ECF No. 117-22. Lee did not agree with this plan. Id.

Ultimately, Marsh and leadership were not making progress with Lee in confirming a transition plan, and thus Marsh believed a formal meeting was necessary to settle on a clear path forward. Id. at 271: 18-22; 285:1-5 ("And the whole time, they were trying to figure out what they're going to do in terms of a transition plan. But since they were not able to get an agreement, that's why Clay called that meeting so we can get an agreement by a transition plan.").

Accordingly, a meeting was scheduled for July 22, 2021 for Lee, Marsh, and Rezai in Marsh's office at 4:00 PM. ECF No. 117-23. The meeting lasted approximately forty-five minutes and did not result in an agreed transition plan. ECF No. 117-4, 285:7-9, 304:11-12. Rather, Lee "walked out" of the meeting and told Rezai to contact his attorney. Id. at 285:10-15. According to Rezai, the decision to remove Lee as chair occurred at this meeting. Id. at 302:2-5. Before leaving the meeting, Lee was not expressly informed that he was being removed as chair, but Rezai believed it was understood that he would no longer be the chair because of the context of the conversation. Id. at 304-305 ("I think it was understood if he doesn't agree. Clay can do it [remove Lee as Chair] anytime as the dean.").

10

After the meeting, Marsh tried to recommunicate with Lee, but he directed leadership to his counsel and leadership determined they needed to remove Lee from the chair position before his contract renewed. ECF No. 120-1, 289:22-290:2. On August 9, 2021, Marsh and Rezai brainstormed language to notify faculty of Lee's removal as Neurosurgery Chair. ECF No. 117-4, 306:7-17.

On July 29, 2021, Lee's counsel, Marie Millie Jones, sent a letter to Marsh, Rezai, Edmond, and WVU/UHA's counsel outlining Lee's expectations if he agreed to continue in his positions to assist in the transition period for a new chair. ECF No. 120-22. The letter stated that WVU/UHA were obligated to comply with its 5-year employment commitment and terms of Lee's employment contracts. Id. The letter also alleged that Marsh's age-related comments constituted age discrimination and that Lee was not provided any explanation for being asked to step down from his chair position. Id. WVU/UHA counsel, Carol Marunich and Katherine Dean, discussed the terms and entered into negotiations with Lee's counsel. ECF No. 120-24. Following, on August 12, 2021, Jones sent Marunich and Dean a second letter with updated terms in which Lee would resign from his roles and pursue legal action. Id. On August 18, 2021, WVU/UHA's counsel informed Lee via his counsel that WVU would be removing him as the Neurosurgery Chair, effective September 1, 2021. ECF No. 120-23. The letter recognized that Lee would remain employed by UHA under the Professional Services

11

Agreement (.4 FTE) and gave Lee the option to increase his clinical time to maintain benefits. Id. Further, Lee retained a faculty appointment with the WVUSOM. Id. Accordingly, WVU/UHA rejected Lee's proposal and intended to proceed with his transition from the chair position on September 1, 2021. Id. Marsh and Rezai informed the Neurosurgery Department that Lee would no longer be chair at a department meeting on August 25, 2022. ECF No. 120-27. Dr. Pete Konrad was appointed as the interim Chair of Neurosurgery, and later was appointed to the permanent position. Id.; ECF No. 120-1, Marsh Dep. at 318:5-7. Konrad is in his sixties and is approximately the same age as Lee. ECF No. 117-4, Rezai Dep. at 386:9.

On August 20, 2021, Lee field a Charge of Discrimination with the Equal Employment Opportunity Commission. ECF No. 120-27; ECF No. 120-29. Additionally, Lee filed a grievance with WVU's Office of Diversity, Equity, and Inclusion on September 14, 2021. ECF No. 120-27. Lee alleged that Marsh and Rezai's decision to accelerate his removal as Chair by one year was the result of retaliation related to his reporting age discrimination on July 29, 2021. Subsequently, WVU retained Julie Moore and Bowles Rice LLP to investigate Lee's DEI Complaint. ECF No. 120-27.

While in the process of determining Lee's future at WVU/UHA or transition from the Chair position, Lee was also pursuing alternative employment. Beginning in July 2021, Lee communicated

12

with staff from the Children's Hospital of San Antonio ("CHofSA").
ECF No. 117-25. Lee sent his CV to doctors at CHofSA on July 6,
2021. ECF No. 117-24. On July 22, 2021 – following his meeting
with Marsh and Rezai – Lee met over Zoom with Dr. Katherine
Barsness, the Chair of the Department of Neurosurgery at CHofSA.
ECF No. 117-25; ECF No. 120-13, Lee Dep. at 345: 20-21. On October
11, 2021, Lee formally applied for a position as Professor of
Neurosurgery to work at Children's Hospital of San Antonio. ECF
No. 117-27. On October 21, 2021, Lee signed an employment agreement
with Baylor College of Medicine to work as the Section Chief of
Pediatric Neurosurgery. ECF No. 117-28. The Baylor employment
contract provided an employment commencement date of March 28,
2022. Id. On November 9, 2021, Lee informed his administrative
assistant that he intended for his last month with WVU/UHA to be
December 2021, but advised her that he had not yet announced his
resignation. ECF No. 117-30. Further, Lee's wife informed their
landlord that their final month in West Virginia would be December
on October 10, 2021 [ECF No. 117-29] – after having already moved
to a month-to-month lease in August. ECF No. 117-26.

Lee intended to take three-month sabbatical in early 2022
before starting work with CHofSA. ECF No. 117-30. Lee went to
Madrid Spain on or about December 22, 2021, and returned to San
Antonio, Texas on January 14, 2022. Lee was scheduled to work in
Morgantown, West Virginia for UHA in February 2022. ECF No. 117-

8, Lee Dep. at 281: 13-16. On January 14, 2022, Konrad, as acting Chair, emailed Lee regarding his availability to work in the clinic the following week and asked for an in-person meeting with Lee. ECF No. 117-32. In a new email thread with the subject line "Re: Notice of Departure", Lee informed Konrad, Rezai, Marsh, Gordon Gee, and Karyn Wallace that he felt he was "being pushed out" and could not "remain at WVU any longer." ECF No. 117-33. While Lee stated he was willing to work with Konrad on timing and scheduling, he informed Konrad that he was prepared to leave immediately. Id. Lee sent his notice of resignation because he was unable to return to Morgantown the week of January 19, 2022, due to travel plans and because he thought he was being set up to be fired. ECF No. 117-8, Lee Dep. 279: 1-20 ("I quit before I got fired.").

Ultimately, Lee began working for CHofSA and filed suit against WVU and UHA on December 15, 2022.

### III. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." Id. at 317–18.

Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court views the evidence in the light most favorable to the non-moving party and draws any reasonable inferences in the non-moving party's favor. See Fed. R. Civ. P. 56(a); see Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

## IV. DISCUSSION

For the reasons that follow, Defendant UHA is entitled to summary judgment on all the claims asserted in Dr. Lee's Complaint. As an initial matter, the Court assumes without deciding, for the purposes of this opinion only, that West Virginia Medical Corporation d/b/a University Health Associates is culpable for the statements of Dr. Clay Marsh, Chancellor and Executive Dean for health science at WVU and that Lee's removal as Chair is an adverse action to his employment with UHA as a clinical physician.

Notwithstanding, the Court finds that summary judgment is proper as to all counts for the following reasons.

15

**A.    COUNT 1: AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT AGAINST DEFENDANT UHA**

The ADEA provides that it is unlawful for "an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a). "To prevail on an ADEA claim, a plaintiff must prove by a preponderance of the evidence that age constituted the but-for cause of the adverse employment action." Bandy v. City of Salem, Virginia, 59 F.4th 705, 710 (4th Cir. 2023). A plaintiff may do so through direct or circumstantial evidence of age discrimination. Id.

"Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" Bandy, 59 F.4th at 711 (quoting Taylor v. Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) (en banc), abrogated on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 98 (2003)). The Fourth Circuit adopted the Fifth Circuit's Jackson test, Jackson v. Cal-Western Packaging Corp., 602 F.3d 374 (5th Cir. 2010), for determining whether derogatory comments constitute direct evidence of age discrimination. Bandy, 59 F.4th at 711.

> [D]erogatory comments constitute direct evidence of discrimination if they are '(1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse

> employment decision; (3) made by an individual
> with authority over the employment decision at
> issue; and (4) related to the employment
> decision at issue.'

Id. "Derogatory comments about an employee's age may be direct evidence of age discrimination, provided they concern the employee's age and sufficiently demonstrate that the employer's age-related animus affected the employment decision at issue." Arthur v. Pet Dairy, 593 F. App'x 211, 218 (4th Cir. 2015).

Additionally, a plaintiff may rely upon circumstantial evidence to support a prima facie claim of age discrimination. Without direct evidence of intentional discrimination, courts analyze ADEA claims under the McDonnell Douglas burden-shifting framework established for Title VII claims. See Darnell v. Tyson Foods, Inc., 536 F. App'x 366, 369 (4th Cir. 2013). To establish a prima facie case of age discrimination:

> [A plaintiff] must demonstrate that: (1) he is
> a member of a protected class; (2) he suffered
> an adverse employment action; (3) he was
> performing his job duties at a level that met
> his employer's legitimate expectations at the
> time of the adverse employment action; and (4)
> the position remained open or was filled by a
> similarly qualified applicant outside the
> protected class. Hill, 354 F.3d at 285.

Id. (citations omitted). If an employee establishes a prima facie case of age discrimination, the burden then shifts to the employer to rebut the presumption of discrimination by producing evidence that it acted for "a legitimate, nondiscriminatory reason." Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019).

At the final stage of the McDonnell Douglas framework, "[t]he employee must 'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant[-employer] were not its true reasons, but were a pretext for discrimination.'" Id. at 726.

Importantly, "an employee cannot prevail on an age discrimination claim by showing that age was one of multiple motives for an employer's decision; the employee must prove that the employer would not have [taken the adverse employment action] in the absence of age discrimination." Bandy, 59 F.4th at 710 (quoting Westmoreland, 924 F.3d at 725). "[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated and [u]nless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of [discrimination]." McNeal v. Montgomery Cnty., Md., 307 F. App'x 766, 774 (4th Cir. 2009) (insertions in original) (internal citations omitted). Furthermore, "[i]n order for derogatory remarks to be indicative of discrimination, the statements must not be isolated or ambiguous, and there must be a nexus between the statements and the challenged employment decision." Diamond v. Bea Maurer, Inc., 128 F. App'x 968, 972 (4th Cir. 2005) (finding plaintiff failed to proffer direct or indirect evidence of racial employment discrimination because the three

18

claimed remarks were both ambiguous and isolated and did not provide a nexus to the employment action).

Additionally, "[c]omments about age often do not 'carry the same animus as those about race or gender' because 'barring unfortunate events, everyone will enter the protected age group at some point in their lives.'" Witzke v. Pepsi Bottling Ventures, LLC, 2018 WL 4491219, at *5-6 (D. Md. Sept. 19, 2018), aff'd, 773 F. App'x 130 (4th Cir. 2019)(quoting Birkbeck v. Marvel Lighting Corp., 30 F.3d. 507, 512 (4th Cir. 1994) (holding that statement by decision maker that "there comes a time when we have to make way for younger people" was not evidence of age discrimination)). Rather, "[a]ge-based comments that merely reflect 'a fact of life' are 'truisms' that cannot establish a discrimination claim." Id.

"Though not dispositive, the fact that the decisionmaker for the adverse employment action belongs to the same protected class as the plaintiff is probative of a lack of discriminatory intent." Rorie v. Bd. of Educ. of Charles Cnty., 653 F. Supp. 3d 217, 237 (D. Md. 2023)(citing Love v. Alamance County Bd. of Educ., 757 F.2d 1504, 1509 (4th Cir. 1985)). See Thompson v. CSX Transportation, Inc., 582 F. Supp. 3d 355, 368 (S.D.W. Va. 2022), aff'd, 2023 WL 2344230 (4th Cir. Mar. 3, 2023)(finding the fact that the decision maker was in the same protected age class as the employee created an inference against age discrimination); Beach v. DXC Tech. Co., 2020 WL 3065308, at *5 (S.D.W. Va. June 9, 2020).

19

Furthermore, the "same actor" inference can support that an employer's proffered reason for discharging an employee is not pretextual if the employee is "hired and fired by the same person within a relatively short time span." Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991).

UHA argues that the ADEA age discrimination claim fails for multiple reasons. First, UHA contends the two subject age-related comments are not direct evidence of discrimination because they related to the tenure of Lee's potential replacement, rather than Lee's age. ECF No. 118 at p. 18. Second, UHA argues Lee cannot establish a case of age discrimination under the McDonnell Douglas burden-shifting framework because his age was not the but-for cause of his termination. Id. at p. 19. Further, UHA asserts the two comments were isolated, stray remarks which did not relate to Lee's age. Rather, Marsh's comments were general remarks regarding the need for generational change. Id. UHA further argues that any inference of discrimination is undercut by the facts that Dr. Marsh recruited and terminated Lee and Lee's replacement, Dr. Konrad, is the same age as Lee. Id. at p. 20.

In contrast, Lee asserts that Marsh's two age-related comments are direct evidence of age discrimination. ECF No. 120 at p. 15. Lee claims that the comments were related to his employment because they occurred during discussions to remove Lee as Chair of

the Neurosurgery department, and subsequently his role as a physician with UHA. Id. at p. 120.

Here, the Court finds that Plaintiff has failed to prove a prima facie case of age discrimination under the ADEA. As an initial matter, the Court notes that the employment at issue is Lee's employment as a physician with UHA, not Lee's chair appointment with WVU. Marsh's comments that the new Neurosurgery Chair should be someone younger with a longer runway for the position are not direct evidence of age discrimination. First, the comments occurred in May and June 2021 during discussions when it was believed Lee was interested in beginning a new position with WVU and would be stepping down as Chair and assisting in the recruitment of his successor. To the extent Plaintiff argues Lee's removal as Chair is an adverse action to his employment with UHA as a clinical physician, the comments occurred two to three months before he was removed as chair and at least six months before he resigned from his employment with UHA. Thus, the comments did not occur proximate in time to any adverse employment action. Furthermore, the subject comments did not relate Lee's age to his skill or ability as a neurosurgeon. Marsh nor anyone else with UHA or WVU ever told Lee he was too old to practice medicine. ECF No. 117-8, Lee Dep. at 285: 22-286:6. Thus, Plaintiff's direct evidence argument fails.

The undisputed evidence further shows that Plaintiff cannot make out a prima facie case of age discrimination based upon circumstantial evidence. Plaintiff resigned from his clinical position with UHA in January 2021, while away from work and after securing new employment in San Antonio. The record reflects that Lee was not meeting WVU's legitimate expectations as to the chair position or UHA's legitimate expectations for surgical productivity. The fact that Lee received the annual chair bonus is not dispositive of his performance, because all department chairs received the bonus during the subject years. Further, it is evident that efforts were made to collaborate with Lee in finding him an appropriate position at WVU and he ultimately ended those negotiations when he walked out of the July 2021 meeting.

Additionally, Plaintiff's claims of age discrimination are further discredited because Lee's replacement, Dr. Konrad, is in his sixties and in the same protected age group as Plaintiff. This supports that age was not the but-for cause of his removal. Further, while the same-actor inference does not apply because of the time lapse between Lee's hiring and departure, the Court still finds it relevant that Marsh took place in Lee's selection and removal from the chairmanship. The fact that Marsh is in the same protected age group also further discounts any discriminatory intent.

In conclusion, the two isolated comments made regarding potential applicants for Lee's replacement are insufficient to support a claim for age discrimination. UHA set forth legitimate reasons to support why WVU removed Lee from his chair position and Lee has failed to proffer evidence that such reasons are pretextual. Thus, viewing the evidence in the light most favorable to Lee, there is no genuine dispute of material fact with regard to Lee's age discrimination claim and summary judgment is **GRANTED** as to Count One.

**B.   COUNT II: AGE DISCRIMINATION IN VIOLATION OF THE WEST VIRGINIA HUMAN RIGHTS ACT AGAINST DEFENDANT UHA**

The WVHRA makes it unlawful for an employer to discriminate against an employee "with respect to compensation, hire, tenure, terms, conditions or privileges of employment" based on the employee's age, which is defined as age 40 or above. Wilson v. Arcelormittal Weirton, LLC, No. 5:19-CV-254, 2021 WL 612405, at *2 (N.D.W. Va. Jan. 14, 2021) (citing W. Va. Code §§ 5-11-9, 5-11-3). Like their federal counterparts, claims under the WVHRA follow the McDonnell Douglas burden-shifting framework. Id.

Under the burden-shifting framework, an employee must first prove a prima facie case of discrimination. Id. To do so, he must show (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; and (3) that but for his protected class status, the adverse action would not have been

taken. Id. (citing Syl. Pt. 2, Conaway v. E. Assoc. Coal Corp., 358 S.E.2d 423 (W. Va. 1986)). "[A] plaintiff can create a triable issue of discrimination animus through direct or circumstantial evidence." Knotts v. Grafton City Hosp., 786 S.E.2d 188, 194–95 (2016) (internal citation omitted). If the employee meets this initial burden, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. Id. If the employer does so, the burden shifts back to the employee to prove that the employer's rationale is mere pretext for unlawful discrimination. Id.

An adverse employment action means a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id. at *3 (citation omitted).

For the same reasons elaborated supra regarding Lee's ADEA age discrimination claim, Lee's WVHRA age discrimination claim also fails. Thus, UHA's motion for summary judgment is **GRANTED** as to Count Two.

### C.  COUNT III:  RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT AGAINST DEFENDANT UHA

"An employer violates the ADEA by retaliating against an employee for engaging in a protected activity." Johnson v. Mechanics & Farmers Bank, 309 F. App'x 675, 684 (4th Cir. 2009) (unpublished) (citing 29 U.S.C. § 623(d) (2000)). A plaintiff must

satisfy the following elements to establish a prima facie case of retaliation under the ADEA: "(1) the plaintiff engaged in a protected activity; (2) the employer took an adverse employment action against the plaintiff, and (3) a causal connection existed between the protected activity and the adverse employment action." Id. (citing Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)).

An employee who voluntarily resigned from his job has not experienced an adverse employment action. Cooper v. Smithfield Packing Co., Inc., 724 F. App'x 197, 202 (4th Cir. 2018). However, an employee can be "constructively discharged" if his "employer has created a hostile working climate which was so intolerable that the employee was forced to leave his . . . employment." Spano v. Metro. Life Ins. Co., No. 2:09-cv-01243, 2011 WL 2180657, at *5 (S.D.W. Va. June 2, 2011) (citation omitted). Thus, the employee must show that the "working conditions created by or known to the employer were so intolerable that a reasonable person would be compelled to quit."  Id.

The standard for constructive discharge is higher than the standard for hostile work environment. See Tinsley v. Astrue, No. 3:10-cv-01184, 2012 WL 5377881, at *8 (S.D.W. Va. Aug. 15, 2012), report and recommendation adopted ("The law is well-settled that a claim of constructive discharge requires proof of working conditions that are even harsher than those required to state a

25

claim of hostile work environment."). General unhappiness with performance management is insufficient to meet the standard for constructive discharge. See Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004)("[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign.").

UHA argues that Lee cannot succeed on a claim of retaliation based upon his removal as chair or reduction to .4 FTE. ECF NO. 118 at p. 21. First, UHA argues that WVU's removal of Lee as chair does not support the second or third elements of a retaliation charge because UHA did not have the authority to remove Lee as chair, and nonetheless the transition to remove Lee as chair began in March 2021 before Marsh's comments, and WVU decided to remove Lee as chair before receiving correspondence from Lee's attorney on July 29. 2021. Id. at pp. 21-22. As for the adjustment to a .4 FTE, UHA argues that was the total clinical effort allocation pursuant to his contracts and the .6 FTE was the time allocated under Lee's employment with WVU. Id. at p. 22. Thus, there was a legitimate, non-discriminatory reason to adjust Lee's FTE. Id.

In contrast, Lee argues that the timing of Lee's removal as chair after his counsel sent the letter claiming age discrimination is evidence of retaliatory intent and creates the necessary causation. ECF No. 120 at p. 19. Furthermore, Lee argues that he

was constructively discharged in retaliation for reporting Marsh's comments and pushed out of his employment when he was removed from the chair position, was reduced from a 1.0 FTE to a .40 FTE, had his compensation reduced to $630,000, lost employer paid benefits, and lost his office space and administrative support.

Here, the Court ultimately finds that Plaintiff's retaliation claim, including allegations of retaliatory constructive discharge, fails as a matter of law. Assuming arguendo Plaintiff set forth sufficient evidence to support a prima facie case of retaliation under the ADEA, the undisputed facts show that UHA acted with legitimate nondiscriminatory purposes. Lee was not removed as chair because his attorney's July 29th letter alleged age discrimination.[2]

The record clearly shows that Marsh and Rezai began working with Lee to transition him to a different position, months prior. The record consistently shows that leadership was not happy with his performance as chair and counseled Lee on ways he could improve. Marsh and Rezai ultimately removed Lee from the chair position because Lee turned down the pediatric neurosurgery position and ceased negotiations for stepping down. While Lee contends that the timeline for his removal was accelerated due to

---

[2] Plaintiff appears to argue in his response brief that he reported the alleged discriminatory comments to Rezai in May 2021. ECF No. 120 at p. 18. However, Plaintiff's citation to the record refers to Lee speaking with Rezai after his negative review with Dr. Charlton – not reporting age-related comments from Marsh. See ECF No. 120-13 at 135.

his reports of discrimination, the record shows that Rezai and Marsh had to appoint an interim chair and begin the search process without Lee because he walked away and did not agree to assist in the transition. Marsh was entitled to end Lee's chair appointment at any time, but instead tried to take Lee's career and preferences into consideration. Accordingly, the decision to remove Lee from the Neurosurgery Chair appointment was based on legitimate concerns regarding Lee's performance and was not retaliatory. Thus, UHA's motion for summary judgment is **GRANTED** as to Count Three.

### D.    COUNT IV: RETALIATION IN VIOLATION OF THE WEST VIRGINIA HUMAN RIGHTS ACT AGAINST DEFENDANT UHA

"The WVHRA prohibits retaliatory discharge, such as 'any form of reprisal or otherwise discriminat[ing],' against a person "because he or she has opposed any practices or acts forbidden under" the WVHRA or because that person 'filed a complaint, testified, or assisted in any proceeding under' the WVHRA." Biddle v. Fairmont Supply Co., 2015 WL 5634611, at *5 (N.D.W. Va. Sept. 24, 2015), aff'd, 648 F. App'x 382 (4th Cir. 2016) (citing W. Va. Code § 5-11-9(7)(C)). "A protected activity includes the filing of a complaint against an employer for discrimination." Id.

To prove a prima facie case of retaliatory discharge under the WVHRA, a plaintiff must prove:

> (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that

28

> complainant was subsequently discharged and
> (absent other evidence tending to establish a
> retaliatory motivation), (4) that
> complainant's discharge followed his or her
> protected activities within such period of
> time that the court can infer retaliatory
> motivation.

Syl. Pt. 10, Hanlon v. Chambers, 464 S.E.2d 741 (W. Va. 1995);

Roth v. DeFeliceCare, Inc., 226 W. Va. 214, 224, 700 S.E.2d 183, 193 (2010).

For the same reasons elaborated supra regarding Lee's ADEA retaliation claim, Lee's WVHRA retaliation claim also fails. Thus, UHA's motion for summary judgment is **GRANTED** as to Count Four.

### E.   COUNT V: BREACH OF CONTRACT AGAINST DEFENDANT UHA

In West Virginia, the elements of breach of contract are (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract, and (3) damage arose from the breach. Patrick v. PHH Mortgage Corp., 937 F.Supp.2d 773, 792 (N.D.W. Va. 2013). "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Wickland v. Am. Mountaineer Energy, Inc., No. 1:17-CV-205, 2019 WL 1590590, at *6 (N.D.W. Va. Apr. 12, 2019) (quoting Syl. Pt. 2, Toppings v. Rainbow Homes, Inc., 490 S.E.2d 817 (W. Va. 1997)). "The mere fact that parties do not agree to the construction of a contract does not

render it ambiguous." Id. (quoting syl. Pt. 2, CONSOL Energy, Inc. v. Hummel, 792 S.E.2d 613 (W. Va. 2016)).

"An employee, demanding damages for alleged breach of his contract of employment, may rest his case upon proof of a valid contract and its breach, the measure of his damages being the contract price of his services." Wheeling Jesuit Univ., Inc. v. Voorhees, 907 S.E.2d 572, 579 (W. Va. Ct. App. 2024).

In support of dismissing the breach of contract claim, UHA asserts that once Lee stopped serving as Chair, it was under no obligation to maintain Lee's employment or full-time compensation and benefits. ECF No. 118 at p. 24. Accordingly, Defendant contends it had the right to adjust Defendant's compensation on September 1, 2022, after Lee was formally removed as Chair. Id. at p. 25. In contrast, Lee asserts that UHA breached its contract because he was removed from the chair position for improper reasons – age discrimination and retaliation. ECF No. 120 at p. 21. Plaintiff further asserts that UHA did not provide the necessary 90-day notice of his termination and downgraded his employment from a 1.0 FTE to .4 FTE. Id. Lee further claims that he was given a 5-year commitment by UHA. Id. at p. 22. During the Court's hearing on the subject motion, the Court asked Plaintiff to identify the specific provisions of the UHA contract he contends were breached. Plaintiff stated that multiple provisions were violated based upon the alleged discriminatory or retaliatory conduct.

30

Here, the Court finds that Plaintiff's breach of contract claim fails as a matter of law. First, the only contract at issue is the UHA Professional Services Agreement. The Court assumed without deciding that UHA can be culpable for Marsh's comments. The Court does not make any finding regarding whether WVU and UHA are integrated employers or operate under a joint employer theory – and thus the two separate employment agreements are not read as one. Paragraph 12 of the UHA Contract unambiguously provides:

> **Integration.** This Agreement constitutes the sole and entire agreement between the parties with respect to Physician's provision of medical professional services and coverage and performance of other clinical duties. Any negotiations, discussions, or understandings between the parties, which have not been expressly included in this written agreement, are not and shall not be considered or construed to be part of this Agreement.

ECF No. 117-10 at ¶ 12. Thus, under the clear contract language, the WVU Contract is not a part of UHA's agreement with Lee regarding his clinical practice and services. The same is true regarding any claim of a five-year commitment by WVU or UHA for employment. The UHA Contract was automatically renewable for one-year terms. Id. at ¶ 6. Thus, any conversations or negotiations that took place before the UHA Contract was signed are not part of the final agreement. Further, either parties' or individual's belief regarding Lee's expected tenure with UHA is not dispositive; the language of the UHA Contract controls. The WVU Contract – not

31

the UHA Contract – provided requirements, benchmarks, and expected outcomes for Lee's tenure as the Neurosurgery Chair appointment. While the WVU Contract provides 5-year goals, that contract is separate from the UHA Contract. ECF No. 121-12 at p. 4. Accordingly, this argument fails.

Additionally, the UHA Contract states that it terminates automatically upon the "termination of Physician's status as a full-time employee and member of the Faculty of WVUSOM." ECF No. 117-10 at ¶ 7.a.ii. Plaintiff argues he was entitled to the 90-day notice requirement if his contract with UHA would not be renewed. However, UHA did not end his employment as a physician. Rather, when WVU's counsel notified Lee's counsel that he would be relieved of his chair appointment effective September 1, 2021, Lee was informed that he would continue his employment with UHA and was given the opportunity to increase his clinical work to maintain his medical and retirement benefits. ECF No. 120-23. Lee did not increase his clinical hours and thus was not entitled to receive fulltime benefits.

While Plaintiff contends he was forced to resign his clinical position due to age discrimination and retaliation, the Court has already rejected these arguments. Defendant was not subject to a retaliatory constructive discharge. Rather, Plaintiff voluntary resigned his employment with UHA after finding new employment. Plaintiff chose to maintain a .4 FTE and take time off before

resigning, rather than work the minimum FTE required to remain benefit eligible. The undisputed evidence shows that Dr. Konrad wanted to schedule Lee for clinic hours during January 2022. ECF No. 117-32. However, rather than return to work, Lee tendered his resignation via email. ECF No. 117-33. The fact that UHA did not discharge Lee – for any purpose – is bolstered by the evidence that Lee told his assistant in November 2021 that his last month in West Virginia would be December and that he had already accepted a new job. ECF No. 117-30. For these reasons, Lee's claim for breach of contract fails.

### V.    CONCLUSION

For the reasons stated herein, *Defendant's Motion for Summary Judgment* [ECF No. 117] is **GRANTED**. Plaintiff's Complaint [ECF No. 1] is **DISMISSED WITH PREJUDICE**. This action is thus **STRICKEN** from the Court's active docket and the Clerk is **DIRECTED** to enter judgment in favor of West Virginia University Medical Corporation, d/b/a University Health Associates.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record by the CM/ECF system.

**DATED:** February 27, 2025

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

33